UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

T. CAMILLE FADIA,

        Plaintiff,

                      DECISION AND ORDER
    -v-                     09-CV-6364 CJS

U-HAUL, INC., OWNER/MANAGER,
ROCHESTER, NY, U-HAUL, INC.,
ELSMERE, KY, U-HAUL, INC.,
ARIZONA HEADQUARTERS,

        Defendants.
_____

APPEARANCES

| | |
|---|---|
| For Plaintiff: | T. Camille Fadia, *pro se* |
| | c/o Pepe |
| | P.O. Box 10624 |
| | Greensboro, North Carolina 27404 |
| For Defendants: | Martha Elizabeth Joerger, Esq. |
| | Bryan Cave LLP |
| | 1290 Avenue of the Americas, 33rd Fl. |
| | New York, New York 10104 |
| | |
| | Patrick B. Naylon, Esq. |
| | Goldberg Segalla, LLP |
| | Two State Street, Suite 805 |
| | Rochester, New York 14614 |

INTRODUCTION

   This is an action in which Plaintiff, proceeding *pro se*, alleges that Defendants improperly confiscated a rental truck from her that contained her personal belongings, in violation of the parties' rental agreement, and refused to return her property for several months. Further, she contends that Defendants lost or stole certain items of her property. Now before the Court is Defendants' motion to dismiss the complaint (Docket No. [#6]). For the reasons that follow, the application is granted and this action is dismissed.

BACKGROUND

The following information is distilled from the Complaint [#1] in this action, as supplemented by several submissions from Plaintiff.[1] On May 14, 2008, Plaintiff rented a truck from a U-Haul representative in Elsmere, Kentucky. According to documents submitted by Plaintiff, she agreed to return the truck to the same location on the following day, May 15, 2008. However, Plaintiff maintains that a U-Haul employee named Steve ("Steve") orally granted her an extension of the return date. On May 21, 2008, Plaintiff was operating the truck on Interstate 90, when it broke down, apparently somewhere west of Rochester, New York.[2] Plaintiff contacted U-Haul, and Steve granted her a further extension of time, until May 23, 2008, to return the truck. A mechanic repaired the truck, and Plaintiff resumed her journey. However, the truck broke down a second time, approximately fifty miles west of Rochester. A tow truck operator towed the truck to Rochester, where he left it in a "plaza." Meanwhile, Plaintiff checked into a motel somewhere nearby. Apparently, a mechanic repaired the truck and notified U-Haul, but not Plaintiff, of that fact.

On May 22, 2008, Plaintiff called the U-Haul rental facility in Elsmere, Kentucky, and spoke with a man named Tony ("Tony"), who said that a mechanic had filed a report with U-Haul, stating that the truck had been repaired and that Plaintiff was "on her way" to get the truck. Tony stated, though, that he had been unable to speak directly to the mechanic, and he asked Plaintiff where the truck was located. Plaintiff responded that she did not

---

[1]Docket Nos. [## 10, 13, 14].

[2]Plaintiff speculates that U-Haul actually caused the truck to stop functioning by remote control, using an electronic "gadget" installed in the truck. (Docket No. [#13] at pp. 4-5).

know, because it was no longer in the location where the tow truck driver had left it. Subsequently, Plaintiff suspected that the truck had been stolen. However, on or about May 27, 2008, a witness told Plaintiff that on May 22nd men in another U-Haul truck had come and taken the truck away. Eventually, on or about May 27, 2008, Plaintiff determined that the truck was at a U-Haul location on East Ridge Road in Rochester. However, U-Haul representatives at that location told Plaintiff that she could not have her possessions from the truck unless she paid what she owed on the truck rental, which they maintained was $740. Plaintiff indicated that the amount was incorrect, and she refused to pay.

Plaintiff later learned the circumstances under which the truck had been taken to the U-Haul facility in Rochester. Specifically, she maintains that a U-Haul employee in Arizona, named Tracy ("Tracy"), received a message from the mechanic who had repaired the truck, indicating that he had repaired the truck and that Plaintiff was on her way to get it. Since Plaintiff denied knowing the whereabouts of the truck to Tony, Tracy apparently suspected that Plaintiff had lost or stolen the truck. Tracy called Plaintiff's home telephone and directed her to return the truck, but Plaintiff never received the message until some time in June 2008, because she was traveling. In the meantime, Tracy contacted the U-Haul office in Rochester and directed it to locate and take possession of the truck, which it did.[3]

In any event, since Plaintiff refused to pay the amount demanded by the U-Haul representatives in Rochester, the representatives refused to release her property. Plaintiff eventually filed a complaint with the Office of the Attorney General for the State of Kentucky. On August 11, 2008, the Kentucky Attorney General's Office wrote to Plaintiff and informed

---

[3]This explanation does not make sense to the Court, since the truck had allegedly already been moved from its location in the plaza when Plaintiff spoke to Tony on May 22nd.

3

her that it had forwarded her complaint to U-Haul. On or about September 16, 2008, Plaintiff returned to Rochester and received most of her property. However, certain items of property, such as a corporate book containing Plaintiff's corporate seal and blank stock certificates, were missing. At that time, the U-Haul representative presented Plaintiff with a new billing statement for $597, which was not itemized. Plaintiff refused to pay the bill, because she contends that she owed U-Haul only $386. Nevertheless, the representative allowed Plaintiff to remove her property, after a police officer intervened in the dispute.

On July 15, 2009, Plaintiff commenced this action. The Complaint describes the basis for federal subject-matter jurisdiction as follows: "Claim arises under Federal Law." (Complaint p. 1). The Complaint purports to state claims under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 ("FDCPA") U.S.C. §§ 1692 *et seq*., and the federal Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666. In that regard, Plaintiff states the federal basis for her claims as follows: "Fair Debt Collection Act says you cannot take all of a person's possessions as hostage. Fair Billing Credit Act says you have to show figures itemized – where got amount from." (Complaint [#1] p. 4).

As for damages, Plaintiff states: "I want monetary [sic] for whatever it cost me to get my things back. For clothes I had to buy, because I was left with only the clothes on my back[.] Return Corporate books and stocks + papers or pay me for. Pay for emotional distress and damages." *Id*. More specifically, the Complaint demands fifty thousand dollars in damages. *Id*. at p. 5 ("monetary relief – $50,000."). However, in attachments to the Complaint, Plaintiff alleges that she sustained damages in excess of one hundred thousand dollars. Significantly, in that regard, Plaintiff alleges that her corporate book and corporate papers, which were lost or stolen, are worth one hundred thousand dollars.

4

Subsequently, Defendants filed the subject motion to dismiss the Complaint in its entirety, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Defendants state that the Complaint is "fatally flawed since [Plaintiff's] claims are premised on statutes that have no applicability to Defendants." (Def. Memo of Law at 1). Defendants state that they are not covered by the FDCPA since they are not debt collectors. (*Id*. at 7) ("Since the debt Defendants were attempting to collect was their own, and not the debt of 'another,' Defendants are not proper defendants under the FDCPA."). Defendants also state that they are not covered by the FCBA, since the parties did not have an open-ended credit arrangement. (*Id*. at 8) ("The FCBA is only applicable to open-end credit transactions, and chiefly, to credit card accounts.") (citation omitted).

In response to the motion, Plaintiff does not specifically address the applicability of the FDCPA or FCBA. Instead, she insists more generally that she was wronged, and that Defendants violated "Federal and State laws." (Docket [#13] at 3). Plaintiff also indicates that Defendants violated her federal constitutional rights. (*Id*. at 6, 8, 10-13). Further, Plaintiff indicates that Defendants committed a breach of contract (*Id*. at 12) and a tort (*Id*. at 15). Essentially, Plaintiff maintains that she has some type of claim, and that the Court should decide what it is. (*Id*. at 20) ("I leave it up to Your Honor and the Court to [decide] . . . whether Federal and State laws do or do not apply to [Defendants].").

On May 20, 2010, the parties appeared before the undersigned for oral argument of the motion. At that time, the Court advised Plaintiff that she did not have a claim under federal law. The Court further advised Plaintiff that, although it may be that she had claims under state law, for breach of contract and conversion, it did not appear that her damages would amount to "$75,000, exclusive of interest and costs," as required by the diversity

jurisdiction statute, 28 U.S.C. § 1332.[4]  Accordingly, the Court granted Plaintiff additional time, until August 1, 2010, to submit a supplemental affidavit, explaining how she met the $75,000. jurisdictional threshold.

On July 23, 2010, Plaintiff filed a supplemental affidavit, in which she contends that her damages against Defendants total $185,465.67.  In that regard, Plaintiff states that she suffered $50,000. in damages, as a result of Defendants "willfully and maliciously taking my property without due process of law."  Plaintiff lists such damages, even though the Court explained to her during oral argument that she could not maintain a claim for violation of her due process rights, since Defendants did not act under color of state law.  Additionally, Plaintiff, who apparently produces and/or markets inspirational compact disks (CDs), states that she lost $100,000. in income, as a result of being unable to sell such CDs.  As to this claim, Plaintiff states that she wanted to produce a "Christmas play," but she was unable to do so because her script was contained in the property that was held by U-Haul until September 16, 2008:

> Plaintiff didn't have the play script, which was in the U-Haul truck until September 16, 2008, and then was transferred to storage until now, and which is still in there.  Plaintiff had to get a copy from a priest who had it, and had used part of it at his church, with permission of Plaintiff.  He was busy as he is also a Carmelite Priest as well as a parish priest, and so he could not send said play to Plaintiff until September, 2009. [Approximately one year after she recovered her property.]  So, plaintiff could not put on [the] play yet.  It was too late last year.  We'll see about this year.  So, Plaintiff lost income for not being able to put on [the] play, so that is in expenses here. [sic] Also, Plaintiff just finished producing a Radio Play/CD in 2008 of March, [sic] on miracles of St. Michael and God in a major war, based on true stories, and was selling CDs on it, and all but two people liked it very much . . . . Plaintiff could not do marketing on said Radio Play/CD as she was distraught and traumatized and sick, and trying to work this mess out with U-Haul.  So, Plaintiff estimated that she might have sold about 5,000 CDs since 5/2008 to

---

[4]It appears that there is diversity between the parties.

> 5/2010, had she been able to do marketing on this, and she could have had it aired on radio, which would have resulted in a lot more sales, but is trying to be fair to U-Haul, and is only asking for the money for not being able to sell those 5,000 CDs.

Plaintiff's Supplemental Affidavit at pp. 2-3; see also, Plaintiff's cover letter dated July 20, 2010 ("Note that I only said 5,000 CDs I could have sold, and not more, which might have happened had I had a chance to do marketing on this product."). Apart from the alleged damages attributable to due process violations and lost sales of her CD, Plaintiff states that she incurred damages in the amount of $35,465.67, for things such as clothing, food, and hotel costs.[5]

## DISCUSSION

In ruling upon a motion to dismiss made pursuant to FRCP 12(b)(6), the Court must construe

> the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. To survive dismissal, the plaintiff must provide the grounds upon which her claim rests through factual allegations sufficient to raise a right to relief above the speculative level.

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) (citations and internal quotation marks omitted). In that regard, a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction," as well as "a short and plain statement of the claim, showing that the pleader is entitled to relief." FRCP 8(a).

The standard to be applied on a motion to dismiss for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) is also well settled:

---

[5] For reasons that are unclear, Plaintiff includes claimed damages in the amount of $390., for the cost of flying her pet cats to California.

> A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.

*Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.2000) (Citations omitted). With regard to the amount-in-controversy requirement found in 28 U.S.C. § 1332,

> [a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount. In order for a case to fall under the federal diversity statute, the plaintiff must prove diversity of the parties, and an amount in controversy that appears, to a "reasonable probability," to be in excess of the statutory jurisdictional amount of $75,000.

*Fernicola v. Toyota Motor Corp.*, 313 Fed.Appx. 408, 408-409, 2009 WL 535974 at *1 (2d Cir. Mar. 3, 2009) (citations omitted).

> This burden is hardly onerous, however, for we recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy. To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show "to a legal certainty" that the amount recoverable does not meet the jurisdictional threshold.

*Scherer v. Equitable Life Assurance Society of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citations omitted).

Additionally, where, as here, the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them "to raise the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citation omitted).

<u>Fair Debt Collection Practices Act</u>

Plaintiff alleges that Defendants violated the FDCPA. In relevant part, one of the FDCPA's purposes is "to eliminate abusive debt collection practices by debt collectors."

The term "debt collector" "means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6). The term "debt collector" does *not* include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." In this case, the named Defendants are either U-Haul Companies or U-Haul employees, who were allegedly attempting to collect money owed to U-Haul. Consequently, none of the Defendants meets the statutory definition of a debt collector, and the FDCPA claim must be dismissed.

Fair Credit Billing Act

Plaintiff alleges that Defendants violated the FCBA. In that regard, the FCBA "protects consumers against inaccurate and unfair credit billing and credit card practices." *Rhodes v. Whole Foods Market, Inc.*, No. 06-C-1288, 2007 WL 3256236 at *2 (W.D.Tex. Nov. 5, 2007). However, courts have consistently held that the FCBA applies only to open-ended credit plans. *See, Id.*; *see also, Roybal v. Equifax*, 405 F.Supp.2d 1177, 1180 (E.D.Cal. 2005) ("By its very terms, the FCBA's billing error section applies solely to creditors of open end credit plans."). Since the parties' transaction did not involve an open ended credit plan, Plaintiff cannot state a claim under the FCBA.

Constitutional Claims

The complaint includes vague allegations that Defendants violated Plaintiff's constitutional rights. However, Plaintiff lacks a basis to pursue constitutional claims against Defendants, since they are private entities who were not acting under color of state law. In that regard, 42 U.S.C. § 1983 requires "(a) that the defendant is a 'person' acting 'under the

color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 985 (1999) (citation and internal quotation marks omitted). Consequently, Plaintiff's constitutional claims are dismissed.

Federal Subject Matter Jurisdiction

Plaintiff indicates that subject-matter jurisdiction in this case is based on federal question jurisdiction. However, as discussed above, the Complaint fails to state any federal question claim. Although Defendants have not raised the issue of diversity jurisdiction, the Court is required to determine whether it has subject-matter jurisdiction over this case.[6] Construing the Complaint liberally, it does appear that Plaintiff has included enough facts to allege state-law claims for breach of contract and conversion.

However, from the facts stated above, the Court finds that Plaintiff has not shown, to a "reasonable probability," that damages for such claims would exceed the statutory jurisdictional amount of $75,000. Instead, the Court finds, "to a legal certainty," that Plaintiff's state-law claims would not satisfy the amount-in-controversy requirement. In that regard, the Court has already indicated that Plaintiff cannot recover damages for alleged due process violations. Additionally, Plaintiff's claim that she suffered $100,000. in damages related to her inability to market her CD is entirely speculative, and such damages almost certainly were not

---

[6] *See, Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("[T]he Supreme Court [has] noted the existence of an inflexible rule that without exception requires federal courts, on their own motion, to determine if jurisdiction is lacking. Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court sua sponte.") (citations and internal quotation marks omitted).

10

foreseeable in any event. *See, Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 193, 856 N.Y.S.2d 505, 508 (2008) ("[T]he party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made. It is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred, rather, it is only necessary that loss from a breach is foreseeable and probable. . . . Of course, proof of consequential damages cannot be speculative or conjectural.") (citation omitted); *Fantis Foods, Inc. v. Standard Importing Co., Inc.*, 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 786 (1980) ("The usual measure of damages for conversion is the value of the property at the time and place of conversion, plus interest. Profits lost are generally disallowed, though they may be recoverable if they may reasonably be expected to follow from the conversion.") (citations omitted).

## CONCLUSION

Defendants' motion to dismiss is granted. Plaintiff's claims under the FDCPA and FCBA, as well as her constitutional claims, are dismissed with prejudice. Plaintiff's remaining state law claims are dismissed without prejudice to her re-filing them in state court, pursuant to FRCP 12(b)(1) and 28 U.S.C. § 1367(c)(3). Plaintiff is advised that the statutes of limitations governing her state-law claims will be tolled for a period of thirty days, pursuant to 28 U.S.C. § 1367(d). *See, Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998) ("Section 1367(d) ensures that the plaintiff whose supplemental state claim is dismissed has at least thirty days after dismissal to refile in state court."). If Plaintiff wishes to re-file her action in state court, she must do so within the applicable statutes of limitations governing her state-law claims.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: August 11, 2010
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge